**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DANIELLE RENE KOBROCK** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER: 23-256** |
| **SOCIAL SECURITY ADMINISTRATION** | **DIVISION "5"** |

## <u>ORDER AND REASONS</u>[1]

Plaintiff Danielle Rene Kobrock filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). The matter has been fully briefed, and the issues are thus ripe for review. For the following reasons, **IT IS ORDERED** that Plaintiff's motion for summary judgment is **GRANTED** and Plaintiff's case is **REMANDED** for further proceedings consistent with this opinion.

## I.    BACKGROUND

Plaintiff filed her original applications for a period of disability, DIB, and SSI on March 9, 2020, alleging a disability onset date of May 1, 2018. (Adm. Rec. at 236-54). Plaintiff alleged disability due to post traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, neck problems, back problems, schizoaffective disorder, and lock jaw. (*Id.* at 295). Plaintiff, born on April 29, 1974, was 44 years old on the date on which she alleged onset of disability and 45 years old on the date

---

[1] On June 27, 2023, the parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636. (Rec. doc. 19).

she filed her application. (*Id.* at 310). Plaintiff completed two years of college, and she has past work experience as a sales associate at a salon. (*Id.* at 280).

Defendant initially denied Plaintiff's applications on July 22, 2020, (*id.* at 140-47), and upon reconsideration on April 23, 2021. (*Id.* at 66-79, 82-101). Plaintiff sought an administrative hearing, which took place on March 24, 2022. (*Id.* at 35-63).[2] Plaintiff, who was represented by counsel, and a vocational expert ("VE"), Phunda Yarbrough, testified at the hearing.

On April 25, 2022, the ALJ issued a decision concluding that Plaintiff was not under a disability from her alleged onset date through the date of the decision. (*Id.* at 16-28). In the decision, the ALJ concluded that Plaintiff has the severe impairments of schizoaffective disorder, depression, ADHD, panic disorder, bipolar disorder, PTSD, substance use disorder, and hearing loss (tinnitus). (*Id.* at 19). The ALJ held that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a listed impairment under the regulations. (*Id.*). The ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform the full range of work at all exertional levels but with the following nonexertional limitations: she should avoid concentrated exposure to loud noise; she can perform simple, routine, and repetitive work with occasional interactions with coworkers, supervisors, and the public; and there should be no fast-paced production requirements. (*Id.* at 21). The ALJ determined that Plaintiff is unable to perform any past relevant work. (*Id.* at 26).

---

[2] This hearing was telephonic as it occurred during the midst of the COVID-19 pandemic.

Relying on the testimony of the VE, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform: cafeteria attendant, housekeeping/cleaner, and fingerprint clerk.  (*Id.* at 27).   The ALJ thus concluded that Plaintiff was not disabled from May 1, 2018 through the date of the decision.  (*Id.* at 27).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that she was not disabled from May 1, 2018 through the date of the ALJ's decision.  On November 22, 2022, the Appeals Council denied Plaintiff's appeal.  (*Id.* at 1-7).  Plaintiff then timely filed this civil action.

## II.   STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence.  *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991).  If the Commissioner's findings are supported by substantial evidence, this Court must affirm them.  *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).  It is more than a scintilla but may be less than a preponderance.  *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).  A finding of no substantial evidence is appropriate only if no credible evidentiary

choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues de novo, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey*, 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

## III.   ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, Plaintiff must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if a physical or mental impairment is so severe that the claimant is unable not only to do previous work, but cannot, considering age, education and work experience, participate

4

in any other kind of substantial gainful work that exists in significant volume in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she or he applied for work. 42 U.S.C. § 1382(a)(3)(B).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  First, the claimant must not be presently working at any substantial gainful activity.  Second, the claimant must have an impairment or combination of impairments that are severe.  An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations.  Fourth, the impairment must prevent the claimant from returning to his past relevant work.  Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience.  At steps one through four, the burden of proof rests upon the claimant to show he is disabled.  If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Id.* at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999)).   If the ALJ determines that a Plaintiff is not disabled under step five of the five-part test, the Commissioner must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy.   *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995).   Step five also requires the Commissioner to use the medical-vocational guidelines to make a disability determination.   *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).   "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV.   ISSUES ON APPEAL

There are two issues on appeal:

(1)   Whether the ALJ's RFC determination was predicated on her failure to properly develop the record and her reliance on her own lay interpretation of the limitations resulting from Plaintiff's severe mental impairments.

(2)   Whether the ALJ's RFC determination was the product of legal error when she failed to properly reconcile the findings made in the Psychiatric Review Technique with the mental limitations identified in Plaintiff's RFC.

## V.   ANALYSIS OF THE ISSUES ON APPEAL

**(1)   Whether the ALJ's RFC determination was predicated on her failure to properly develop the record and her reliance on her own lay interpretation of the limitations resulting from Plaintiff's severe mental impairments.**

6

It is axiomatic that the Social Security Administration "has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Webster v. Kijakazi*, 19 F.4th 715, 720 (5th Cir. 2021) (quotation omitted); *see also Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) ("It is the duty of the administrative law judge to develop the facts relative to a claim for benefits fully and fairly.  When he fails in that duty, he does not have before him sufficient facts on which to make an informed decision.").  Plaintiff maintains that to develop the record, Defendant has a duty to order a consultative examination "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the agency] to make a determination or decision on [a] claim." *Hardine v. Kijakazi*, No. 21-60226, 2022 WL 2070399, at *2 (5th Cir. June 8, 2022) (internal citations omitted). Plaintiff argues that in this case, the evidence of record does not include a single opinion regarding the impact that Plaintiff's mental impairments have on her ability to sustain work. Plaintiff thus maintains that a consultative examination was necessary, and the ALJ erred when she failed to order one. *See Hardine*, 2022 WL 2070399, at *2 (citing *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016)) (noting that under Fifth Circuit precedent, "the Commissioner abuses her discretion by failing to order a consultative examination when "the record establishes that such an examination is necessary to enable the ALJ to make the disability decision.").

To counter, Defendant maintains that the ALJ considered in depth the medical reports that outlined Plaintiff's medical history.  (Adm. Rec. at 26).  Specifically, the ALJ considered the administrative findings of the state-agency psychological consultants.  (*Id.*).  However, at the initial and reconsideration levels in July 2020 and April 2021, the state-agency

psychological consultants, Joy Kelley, Ph.D. and Lisa Swisher, Ph.D., determined that there was insufficient evidence to evaluate the claim, as Plaintiff had failed to complete and return necessary documents. (*Id.* at 71, 78). Those included a request for a function report and a work history report which were only provided after the consultants had reviewed the medical file. (*Id.* at 69, 318, 327). Indeed, the consultants were unable to render an opinion regarding Plaintiff's functional limitations, concluding that "while there is medical evidence in file, *there is insufficient vocational and functional evidence in file* to evaluate severity of impairments as the claimant has not completed or returned necessary documents." (*Id.* at 71, 89) (emphasis added). The ALJ did not consider the persuasiveness of these findings because they failed to proffer an opinion or provide a functional assessment based on the medical evidence of record. (*Id.* at 26). Plaintiff agrees that the ALJ correctly noted that the findings of the state-agency psychological consultants did "not contain an opinion or provide a functional assessment." (*Id.*).

However, Plaintiff contends that given the severity of Plaintiff's mental impairments, the ALJ was in no better position than the consultants to be able to account for Plaintiff's functional limitations, despite the fact that Plaintiff ultimately completed and submitted the requested forms to the agency. (*Id.* at 318, 327). Relying on *Montoya v. Berryhill*, Plaintiff argues that, because there was no evidence in the record as to how her mental impairments would impact her functional limitations, the ALJ should have ordered a consultative examination. No. 3:16-cv-1594D-BN, 2017 WL 3835950, at *4 (N.D. Tex. Aug. 1, 2017) (quoting *Ripley v. Chater*, 67 F.3d 552, 557-58 (5th Cir. 1995)) ("examination results, medical history, and work history" when making an RFC determination 'is not sufficient. These

documents may speak to [the claimant]'s symptoms at a few moments in time.  But, on their

own, they do not speak to 'the effect [the claimant's] condition had on [her] ability to work.'").

She maintains that the forms she submitted are replete with evidence of her many inpatient,

extensive hospitalizations, both pre-dating and spanning the entirety of the relevant period.

(Adm. Rec. at 374, 443, 494, 605, 637, 722, 768, 802, 933, 977, 1022).[3]  Plaintiff finds fault

with the ALJ's reliance on Plaintiff's representation that she has no problems remembering

to take her medication, can go to church, and is able to handle stress and changes to conclude

that Plaintiff has only moderate functional limitations.  (*Id.* at 20).  Throughout her many

hospitalizations – as demonstrated by the forms that she submitted – Plaintiff noted that she

was diagnosed with poor or impaired insight into her own impairments and poor judgment

regarding her actions.  (*Id.* at 375, 436, 440-41, 458, 460, 462, 512-13, 567, 610, 818, 940,

951).

    Indeed, Plaintiff often did not know what medication she was supposed to take or

what she was taking, such as when she noted, "I do not know.  I use all kinds of drugs," (*id.* at

440), or when she denied *any* medical history at all, including mental health issues, despite

her records revealing multiple hospitalizations, at times for suicide attempts.  (*Id.* at 435).

Plaintiff needed to be taken to the emergency room, *not because she felt she needed help*, but

because her mother "steered" her life, and her family thought "something [was] wrong with

[her]."  (*Id.* at 494).  Plaintiff asserts that a consultative examination would have resolved

these conflicts in the evidence surrounding her insight and judgment.

---

[3] Even though Plaintiff's hospitalizations are well documented throughout the record, the ALJ incomprehensibly found that there was "no evidence of decompensation of extended duration during the relevant period." (*Id.* at 20).

Defendant maintains that there was adequate objective medical evidence in the record for the ALJ to arrive at her conclusions. (*Id.* at 23-25). In her applications for DIB and SSI, Plaintiff reported that she was unable to work due to PTSD, ADHD, bipolar disorder, and schizoaffective disorder. (*Id.* at 295). She testified at the administrative hearing that paranoia is the main impairment that keeps her from working. (*Id.* at 39-40). She testified that she hears voices and sees people "all the time" every day, and that she is paranoid about what others think. (*Id.* at 40). She stated that she has anxiety at large stores wherein she becomes irritable and cannot breathe. (*Id.* at 41).

The ALJ acknowledged and considered Plaintiff's subjective complaints regarding her mental impairments. (*Id.* at 22). The ALJ noted that the medical records revealed that Plaintiff had been treated for schizoaffective disorder, anxiety, and depression. (Adm. Rec. at 23). In March 2018, Plaintiff was hospitalized for 13 days due to increased progression, depression, suicidal ideation, and paranoid behavior. (*Id.* at 440). She was regarded as irritable, agitated, aggressive, threatening, and difficult to redirect at the emergency room. (*Id.*). She reported a history of polysubstance abuse and exhibited drug seeking behavior. (*Id.*). Plaintiff was offered rehabilitation treatment for substance abuse, but she declined. (*Id.* at 441). She received medication management as well as individual and group psychotherapy services but was noted to have been minimally compliant with group therapy. (*Id.*). The discharge summary reflects that Plaintiff required multiple medications due to the severity of her symptoms. (*Id.*). Ultimately, Plaintiff's condition improved with treatment, and she was discharged in a stable condition to a lower level of care. (*Id*).

Plaintiff's discharge diagnoses were bipolar disorder, depression, anxiety disorder, and substance abuse. (*Id.*).

In June 2018, the police brought Plaintiff to an emergency room on a Physician's Emergency Certificate ("PEC") due to violent behavior, hallucinations, and delusions. (*Id.* at 494). Plaintiff admitted at the time to being noncompliant with her medication for the two days before the incident. (*Id.* at 495). Her cousin reported that Plaintiff was experiencing auditory and visual hallucinations, which were observed in the emergency room as well, as Plaintiff appeared to be talking to imaginary people. (*Id.*). She was admitted for inpatient psychiatric treatment. (*Id.* at 494). Plaintiff stabilized with medication and psychotherapy. (*Id.* at 925-29). She denied suicidal and homicidal ideation, hallucinations, and delusions. (*Id.*). She was compliant with treatment and medication during her stay. (*Id.* at 925). Plaintiff was discharged in stable condition. (*Id.* at 929).

In September 2018, Plaintiff was hospitalized with acute decompensation and a manic episode. (*Id.* at 934). She admitted to medication noncompliance. (*Id.* at 935). She was noted to be angry, irritable, and minimally compliant with the treatment team. (*Id.* at 934). She reported being combative with her mother and manic at home. (*Id.* at 935). Plaintiff was aggressive and uncooperative. (*Id.*). She was unable to answer questions or follow commands. (*Id.*). She was admitted for safety and stabilization. (*Id.* at 934). Plaintiff's acute decompensation ultimately resolved with treatment. (*Id.* at 933-35). She stabilized and was at her baseline at the time of discharge. (*Id.*). She denied suicidal and homicidal ideation. (*Id.*). She was discharged to transition to outpatient care. (*Id.* at 933).

From July 2019 to February 2020, Plaintiff underwent outpatient mental health treatment for bipolar disorder, panic disorder, schizoaffective disorder, and ADHD.  (*Id.* at 565-601).  She complained of mood swings, frequent crying spells, fatigue, racing thoughts, panic attacks, isolation, and auditory hallucinations.  (*Id.* at 584).  She received medication management and individual psychotherapy services.  (*Id.*).  Her mental status examinations were largely normal during her treatment.  (*Id.* at 587-89).  She denied any current suicidal and homicidal ideation as well as substance use.  (*Id.* at 575).

In July 2020, Plaintiff was treated for complaints of anxiety at the Jefferson Parish Correctional Facility.  (*Id.* at 1066, 1039-1103).  She reported using alcohol and Klonopin. (*Id.* at 1067, 1102).  She received individual psychotherapy and medication management services.  (*Id.* at 1068).  On mental status examination, Plaintiff was noted to be calm, cooperative, and slightly confused, but fully oriented.  (*Id.* at 1065).  Her concentration, memory, speech, and eye contact were normal.  (*Id.*).   Her mood was sad with dysphoric affect.  (*Id.*).   Plaintiff's thought processes were tangential and thought content was disorganized, which was noted to improve with medication.  (*Id.*).  She denied suicidal and homicidal ideation, hallucinations, and delusions.  (*Id.*).  Plaintiff got along well with staff and peers.  (*Id.* at 1066).

In November 2020, Plaintiff was admitted for psychiatric treatment at Beacon Behavioral Hospital due to complaints of suicidal ideation, auditory and visual hallucinations, anxiety, and depression.  (*Id.* at 1022).  Earlier that year, a court had ordered Plaintiff to reside and receive substance abuse treatment at Bethel Colony after serving two months in jail for assault and robbery.  (*Id.* at 1024).  The medical consultant noted that her

expressions of suicidal thoughts were possibly some form of malingering or secondary gain because she did not want to be at Bethel Colony. (*Id.* at 1022). Her mood was depressed with constricted affect, but her speech and thought processes were normal. (*Id.*). Plaintiff was fully oriented, and her memory was intact. (*Id.* at 1026). Plaintiff received medication management as well as individual and group therapy services. (*Id.* at 1027, 1032). She stabilized with treatment and was discharged to transition to a lower level of care. (*Id.* at 1032). Her mental status improved by the time of discharge. (*Id.*). Her mood and affect were normal, and her thought processes were more organized. (*Id.*). She denied suicidal and homicidal ideation, hallucinations, and delusions. (*Id.*).

In September 2021, Plaintiff was once again hospitalized at Longleaf Hospital for four days on a PEC due to hallucinations and confusion. (*Id.* at 603-32). She reported that she had been arrested for simple burglary. (*Id.* at 605). Her affect was flat, and she was irritable and guarded. (*Id.*). Plaintiff had been noncompliant with her medications for three weeks. (*Id.*). Plaintiff began psychotropic medication and group psychotherapy. (*Id.*). She reported improvement in her symptoms with treatment and denied any medication side effects. (*Id.*). Plaintiff was discharged in an improved and stable condition. (*Id.* at 606). She denied suicidal and homicidal ideation, hallucinations, and delusions at the time of discharge. (*Id.* at 605-06). Her mental status examination was largely normal. (*Id.* at 606). Her mood was euthymic with constricted affect, and her memory, thought processes, thought content, concentration, and attention were within normal limits. (*Id.*). Her intelligence was estimated to be average. (*Id.*). Plaintiff was cooperative and fully oriented. (*Id.*). Plaintiff maintained that she required no assistance with activities of daily living. (*Id.* at 605).

In November 2021, Plaintiff underwent a psychiatric evaluation after she was found not guilty due to insanity on the charge of simple robbery.  (*Id.* at 640).  She reported that when her symptoms exacerbated, she experienced auditory and visual hallucinations, which led to substance use.  (*Id.* at 640-41).  At the time, Plaintiff was working part-time at a retail store, and she reported her substance abuse disorder was in remission.  (*Id.*).  Plaintiff reported that she had been sober since Hurricane Ida.  (*Id.* at 641).  She complained of severe anxiety.  (*Id.* at 641).  On mental status examination, Plaintiff was well groomed, alert, fully oriented, and cooperative with an "okay" mood, full affect, and mild psychomotor agitation. (*Id.* at 644).  Her memory was intact, and her speech, thought processes, and thought content were normal.  (*Id.* at  644-45).  Her intellectual functioning was again estimated to be average.  (*Id.* at 645).  She denied any suicidal and homicidal ideation, hallucinations, and delusions.  (*Id.*).  Plaintiff was diagnosed with schizoaffective disorder, psychosocial impairment, and opiate use disorder in remission.  (*Id.*).

Citing case law, Defendant contends that the foregoing medical evidence as a whole does not support Plaintiff's allegations of disabling mental limitations.  *See Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1993) (finding that subjective evidence from a claimant need not be credited over conflicting medical evidence.).  Defendant maintains that the evidence establishes only that Plaintiff experienced symptoms of exacerbation and decompensation due to her noncompliance with her medication regimen.  (Adm. Rec. at 25). Defendant maintains that Plaintiff's failure to follow the medicinal recommendations of her doctors indicates that her mental impairments are not as limiting as she claimed.  *See* 20 C.F.R. §§ 404.1529(c)(3)(v), (vi), 416.929(c)(3)(v), (vi).  Defendant thus submits that the

14

ALJ's analysis reveals a thorough consideration of the objective evidence and an appropriate assessment of Plaintiff's mental impairments and their resulting limitations.

Plaintiff vehemently disagrees with Defendant that the ALJ considered the entire record. She argues that from the evidence outlined above, the ALJ cherry-picked only those facts that supported her finding of non-disability. She faults the ALJ for relying on her own lay interpretation of the medical evidence to formulate Plaintiff's mental limitations that resulted from her severe mental impairments and maintains that the ALJ should have ordered a consultative examination. Relying heavily on *Loza v. Apfel*, Plaintiff contends that the ALJ failed to consider the degree of impairment caused by the combination of Plaintiff's physical and mental problems:

> The ALJ failed to address at all a fact issue raised herein which was essential to a conclusion of no disability, namely, the degree of impairment caused by the combination of physical and mental medical problems. *Dodsworth v. Celebrezze*, 349 F.2d 312 (5th Cir. 1965). The ALJ addressed certain of the claimant's complaints separately, tending to minimize them (sometimes despite quite strong evidence to the contrary . . .), but he devoted no discussion and made no factfindings as to disability indicated as arising from the interaction or cumulation of even those medical problems whose existence he acknowledged or did not rule out.

219 F.3d 378, 399 (5th Cir. 2000) (quoting *Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir. 1980)); *see also Scott v. Heckler*, 770 F.2d 482, 487 (5th Cir. 1985) ("Although the ALJ stated that he had 'carefully considered the entire record in this case,' his 'evaluation of the evidence' addresses each impairment separately and does not specifically discuss the interaction or cumulation of all of the claimant's medical problems.").

Reciting a litany of incidents from the record, Plaintiff argues that the ALJ's conclusions here fly in the face of *Loza*. Plaintiff highlights her hospital inpatient stays as

routinely extended for periods of time lasting several days. (Adm. Rec. at 374, 443, 494, 605, 637, 722, 768, 802, 933, 977, 1022). She also cites evidence that her psychotic illness continued to "pose a potential threat to life or bodily function to herself or others requiring the need for continued psychiatric hospitalization." (*Id.* at 948). She was routinely reported as suffering from panic (*id.* at 390, 584, 782), manic behavior (*id.* at 375, 935, 977), hallucinations, including shadows and aliens, (*id.* at 640), "bad" voices (*id.* at 375, 952), and suicidal ideology. (*Id.* at 435, 441, 722, 724, 768). Objective testing in July 2019 indicated a LOCUS score of 22, indicating a need for level 4 care due to serious risk of harm. (*Id.* at 601). She was often noted for paranoia and/or delusions (*id.* at 375, 436, 458, 460, 494, 613, 824, 847, 951), such as when she was observed pointing up at the stars and was trying to "zap" them. (*Id.* at 389). She was convinced that she had killed someone. (*Id.* at 391). She was certain that experiments were being run on her (*id.* at 952), terrorists were "doing all kinda stuff" and had access to her phone (*id.* at 494), she needed to save the country (*id.* at 818), someone was trying to steal her house (*id.* at 818), she had information about "the cartels" (*id.* at 802), and a crack pipe was being used to send messages through the television. (*Id.* at 952). Comparing this evidence to that evinced in *Loza*, Plaintiff maintains that the ALJ's findings were contrary to the overwhelming evidence in the record.

The regulations explain that a consultative examination "*may* be ordered when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [a] claim." 20 C.F.R. §§ 404.1519a(b, 416.919a(b) (emphasis added). The decision to order a consultative examination is within the ALJ's discretion. *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). An ALJ needs to obtain a consultative examination *only if* additional information

is needed to render a decision, as the ALJ, in fact, stated at the hearing in <u>this</u> case.  *See* 20 C.F.R. §§ 404.1517, 416.917.

However, "[t]he Fifth Circuit has made clear that an ALJ 'may not – without opinions from medical experts – derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions.'"  *Liguez v. Kijakazi*, No. 4:20-CV-02798, 2021 WL 4943321, at *7 (S.D. Tex. Aug. 11, 2021) (quoting *Ripley*, 67 F.3d at 557-58), *report and recommendation adopted sub nom. Liguez v. Comm'r of Soc. Sec.*, No. 4:20-CV-2798, 2021 WL 4941997 (S.D. Tex. Oct. 22, 2021); *see Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009); *Ripley*, 67 F.3d at 557 (stating that an ALJ "may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions").  Numerous courts within the Fifth Circuit have held that an RFC determination lacks substantial evidence when it is not supported by any medical opinion and is, instead, based on the ALJ's lay interpretation of raw medical data.  *See, e.g., Esther D. J. v. Kijakazi*, No. 5:20-CV-239, 2022 WL 5434335, at *4 (S.D. Tex. Aug. 3, 2022), *report and recommendation adopted*, No. 5:20-CV-239, 2022 WL 5430194 (S.D. Tex. Aug. 19, 2022) (holding that the RFC determination lacked substantial evidence when the ALJ rejected all available opinion evidence, cited raw medical data, and made his own judgments about claimant's RFC); *Robinson v. Kijakazi*, Civ. A. No. 21-885, 2022 WL 2865857, at **12-13 (E.D. La. June 21, 2022) (same); *Brian K. L. v. Comm'r of Soc. Sec.*, No. 4:20-CV-2810, 2022 WL 902641, at **3-6 (S.D. Tex. Mar. 28, 2022) (same); *Hall v. Kijakazi*, Civ. A. No. 3:20-1178, 2021 WL 4849523, at **11-12 (W.D. La. Oct. 1, 2021) (same); *Dupre v. Saul*, Civ. A. No. 20-2986, 2021 WL 5988381, at *4 (E.D. La. Dec. 17, 2021) (same); *Lopez v. Saul*, No. SA-19-CV-01088-ESC, 2020 WL 4934462, at **4-6 (W.D. Tex.

Aug. 22, 2020) (same); *Garcia v. Berryhill*, No. EP-17-CV-00263-ATB, 2018 WL 1513688, at

**2-4 (W.D. Tex. Mar. 27, 2018) (same); *Raper v. Colvin*, 262 F. Supp. 3d 415, 422–23 (N.D.

Tex. 2017) (same).  The Court finds that the ALJ committed a similar error here.

In this case, the ALJ concluded that Plaintiff retains the residual functional capacity

("RFC") to perform ***the full range of work at all exertional levels*** but with the following

nonexertional limitations: she should avoid concentrated exposure to loud noise; she can

perform simple, routine, and repetitive work with occasional interactions with coworkers,

supervisors, and the public; and there should be no fast-paced production requirements.

(Adm. Rec. at 21).   But there is no medical opinion evidence to support this RFC

determination.  Instead, the ALJ merely relied on medical records regarding the severity of

Plaintiff's conditions.  (*Id.* at 15-20).  In other words, there is no medical opinion in the record

"supporting the ALJ's determination of what Plaintiff *can* do."  *Ramirez v. Saul*, Civ. A. No.

4:18-CV-2504, 2020 WL 1853749, at **3-4 (S.D. Tex. Apr. 12, 2020) (citation omitted)

(emphasis in original).  Thus, it appears the ALJ simply relied on the underlying raw medical

data and interpreted it to reach her own conclusion as to what Plaintiff's limitations were to

support her RFC determination. *See, e.g., id.* at **3-4; *Garcia v. Berryhill*, No. EP-17-CV-00263,

2018 WL 1513688, at **2-4 (W.D. Tex. Mar. 27, 2018).

In summary, having reviewed the record – as a whole and as cited by the ALJ – the ALJ

did precisely what she could not do: She used her own lay interpretation of the raw medical

data to judge Plaintiff's mental impairments and their potential effect on her ability to work.

*McCullough v. Berryhill*, No. 18-cv-128, 2019 WL 1431124, at **13-15 (W.D. Tex. Mar. 29,

2019) (remanding when record lacked any medical opinion, ALJ failed to develop the record by obtaining a "medical source statement," and used his own lay opinions to assess the RFC).

Here, the ALJ "succumb[ed] to the temptation to play doctor." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (citation omitted).  But as Judge Posner warned in *Schmidt v. Sullivan*: "Common sense can mislead; lay intuitions about medical phenomena are often wrong."  914 F.2d 117, 118 (7th Cir. 1990) (Posner, J.).  Moreover, courts have reminded the agency that opinions regarding the effects of mental impairments should be left for mental health professionals, not ALJs.  *Weddle v. Comm'r, Soc. Sec. Admin.*, No. 4:21-CV-998-Y, 2022 WL 2719639, at *7 (N.D. Tex. June 28, 2022), *report and recommendation adopted*, No. 4:21-CV-998-Y, 2022 WL 2718613 (N.D. Tex. July 13, 2022) (citing *Salmond v. Berryhill*, 892 F.3d 812 (5th Cir. 2018) ("[t]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability.")).  This Court finds that the ALJ's RFC determination lacks substantial evidence because she cited only the raw medical data to fashion her own RFC for Plaintiff.  *See McCullough*, 2019 WL 1431124, at **13-15; *Beachum*, 2018 WL 4560214, at *4; *Lopez*, 2020 WL 4934462, at **4-6.

This, however, does not end the Court's inquiry.

"Procedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).  Accordingly, a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Id.*  In other words, a plaintiff must "demonstrate prejudice resulting from the ALJ's errors." *Allen v. Saul*, Civ. A. No. 4:19-CV-1575, 2020 WL 5412630, at *7 (S.D. Tex. Sept. 9, 2020) (citing cases).  "A claimant establishes

prejudice by showing that the ALJ could have reached a different outcome but for the error in question." *Deborah S. v. Comm'r of Soc. Sec.*, No. 4:20-CV-1580, 2021 WL 4442514, at *6 (S.D. Tex. Sept. 28, 2021) (citing *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)); *see Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) ("A claimant establishes prejudice by showing that adherence to the ruling might have led to a different decision.").

In this case, Plaintiff established her severe impairments of schizoaffective disorder, depression, ADHD, panic disorder, bipolar disorder, PTSD, substance use disorder, and hearing loss (tinnitus), as recognized by the ALJ (Adm. Rec. at 19), and for which there is ample medical evidence. There is no medical opinion, however, as to the extent that these severe impairments affect her functional capabilities to perform a full range of work at all exertional levels with some nonexertional limitations. For example, there is no medical opinion evidence that relates to how Plaintiff's frequent and prolonged hospitalizations will affect her ability to sustain work despite her mental impairments.[4] Given the available evidence, the ALJ "could have reached a different disability determination had she fully developed the record and obtained an expert medical opinion regarding the effects that" Plaintiff's limitations "had on [her] ability to work." *Fitzpatrick v. Colvin*, No. 3:15-CV-3202-D, 2016 WL 1258477, at *8 (N.D. Tex. Mar. 31, 2016). Had the ALJ ordered a consultative examination, with a corresponding functional capacity evaluation and related testing, the ALJ "could and would have adduced evidence that might have altered the result." *Carey v. Apfel*,

---

[4] Indeed, at the oral hearing, the ALJ posed a hypothetical to the VE that corresponds to the ALJ's RFC determination for Plaintiff. (Adm. Rec. at 61). The VE responded that there is work in the national economy for a claimant with the ALJ's hypothetical limitations. (*Id.*). However, when the ALJ followed up by asking the VE if that work still existed if the claimant were off task 20 percent of the work day, the VE responded, "No, Your Honor." (*Id.*). The ALJ thus failed to consider the impact of Plaintiff's frequent and extended hospitalizations on her ability to sustain work.

230 F.3d 131, 142 (5th Cir. 2000).  The ALJ's errors are further prejudicial because "they cast doubt onto the existence of substantial evidence in support of the ALJ's decision."  *Clewis v. Kijakazi*, No. CV 4:20-2914, 2021 WL 7084147, at *5 (S.D. Tex. Nov. 17, 2021).  Accordingly, Plaintiff has established prejudice, and remand is warranted.

The Fifth Circuit has described the duty to fully and fairly develop the record as requiring the ALJ to reach "an informed decision based on sufficient facts."  *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).  "If the ALJ does not satisfy his duty, his decision is not substantially justified."  *Ripley*, 67 F.3d at 557.  That is the case here.[5]

## VI.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion for summary judgment is **GRANTED** and Plaintiff's case is **REMANDED** for further proceedings consistent with this opinion.

New Orleans, Louisiana, this 4th day of _____ December _____, 2023.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] Because the Court concludes that remand is warranted after consideration of this issue, it need not address the second issue raised by Plaintiff.

21